May it please the court. Mr. Metcalf was convicted under Section 249A1 of the Federal Hate Crimes Act after a jury trial. Today, I will focus on the constitutionality of Section 249A1 and the jury instruction issue. I wish to reserve 5 minutes of my time for rebuttal. Turning to the first issue, under Section 249A1, Congress made it a federal crime to willfully cause bodily injury to another person because of his or her race. No effect on interstate commerce or use of a public benefit is required. In criminalizing purely intrastate conduct, Congress relied on the enforcement provision of the 13th Amendment. Mr. Metcalf asserts that Section 249A1 is unconstitutional because it is an invalid exercise of Congress's lawmaking authority under the 13th Amendment. Has any circuit The proposition is that those circuits erred in determining that the City of Bernie and Shelby County standards do not apply to this case. The Jones Rational Determination Test is no longer good law. Instead, the principles from City of Bernie and Shelby County apply when analyzing the scope of Congress's power under the enforcement provisions for all of the Reconstruction Amendments. The Supreme Court hasn't explicitly overruled Jones, right? It has not, Your Honor. Jones applied to the 13th Amendment, where the other two cases did not, right? The other two cases involved the 14th and 15th Amendments, that's correct. So aren't we bound by Jones until the Supreme Court tells us we're no longer bound by that? No, you're not, Your Honor. And that is because the U.S. Supreme Court has frequently interpreted the 13th, 14th, and 15th Amendments consistently and recognized that they have a similar purpose and goal. And the enforcement provisions for the 14th and 15th Amendments are virtually identical to the 13th Amendment. And in City and Bernie, when determining that Congress had exceeded the scope of its authority by trying to legislate what the Constitutional Amendment actually provided, in doing so, the Supreme Court relied upon not only the design of the Amendment, but also the text of the enforcement provision itself. And because the text of the enforcement provision under the 13th Amendment is virtually identical, that same analysis applies. Let's assume for a second that Jones is still good law. You lose if Jones is good law, right? I disagree, Your Honor. Wouldn't you have to show that Congress was irrational to conclude that hate crimes are a badge of slavery? It is a difficult task, but not an impossible one. Jones doesn't stand for the proposition that any kind of race-based legislation gets a rubber stamp. It still needs to be established that Congress made a rational determination that this legislation was necessary to eradicate the badges and incidences of slavery. And the biggest reason that this statute fails under the Jones Rational Determination Test is because it is quite clearly not focused at eradicating the badges and incidences of slavery. This legislation is incredibly broad. It could be used to prosecute someone who is African American for assaulting a white person because of his or her race. Even under the Rational Determination Test, that has nothing to do with eradicating the badges and incidences of slavery. So while our main position, of course, is that that test is no longer good law, alternatively, even if it is still the law, this legislation fails under that standard. And I think it's clear in case law both pre- and post-Jones, that even under the Jones Rational Determination Test, not every act of discrimination or any legislation intended to deter or prevent discrimination is lawful and a proper use of Congress's authority. And this court, in maybe, defined what are the badges and incidences of slavery relying on U.S. Supreme Court case law, which also makes clear that race-based violence against any race is overbroad and fails under the Rational Determination Test. The badges and incidences of slavery are aimed at wrongs or acts that were attempted to prevent African Americans or former slaves from living as free men and women. It was about those civil liberties that are enjoyed by free people in our society. And those are generally things like the right to own property, the right to travel, the right to vote, and the right to assemble. And a lot of the U.S. Supreme Court case law on this relates to that, the right to contract, the right to property. But it doesn't then extend to every potential act of injustice and discrimination. That does not fall within the 13th Amendment. But of course our position is that it's not the Jones Rational Determination Test. Instead it is the City of Bernie and Shelby County standards that apply. And of course because it doesn't pass the Rational Determination Test, it's also not congruent and proportional under City of Bernie. Again, this was obviously not designed to eradicate the badges and incidences of slavery. It's not congruent and proportional because of how broad it is and how it can be used. It's also not supported by current findings in Shelby County, as required by Shelby County, excuse me. There's obviously evidence that hate crimes still occur and that it's an issue. But there's no evidence that states are failing to prosecute these federal hate crimes. And there's also no evidence that race-based violence is causing a concern for slavery to return, or that there's this fear that slavery could potentially become an issue again in our country, and that it's necessary to prohibit this kind of conduct to prevent slavery's return. Obviously under the enforcement provisions, legislation can be preventative, but that's not what this legislation is. I think the argument with Shelby County also ties into the general federalism principles that also support that this statute is unconstitutional. When analyzing whether a statute is unconstitutional, this court should keep in mind, as the U.S. Supreme Court has stated, whether the federal government is intruding on an area typically reserved to the states. And that's exactly what is happening here. Congress is attempting to exercise a federal police power without what we generally see, some effect on interstate commerce or something of that nature, to prosecute interstate conduct. Well, the Supreme Court's been pretty clear that we're not supposed to presume that they've chosen to overrule one of their precedents. So I think the Fifth Circuit has some strong logic in their case, and canon, as to why they felt bound still by Jones. Why should we be different? Rodriguez, the case cited by the U.S. Supreme Court, which is, admittedly, a very strong case law, that was different than the situation we have here. Rodriguez was a question of statutory interpretation. It was about the enforceability of arbitration agreements. Instead, what we have here is broader principles of constitutional law and how intermediary courts and attorneys should go about interpreting the constitutionality of a statute. It's not necessary when the Supreme Court lays out, here's how we determine if Congress is within the bounds of what they're able to do under the U.S. Constitution, for the U.S. Supreme Court to then go in and say, here's all the cases where we've done it a little bit differently. They are now overruled. Instead, what the U.S. Supreme Court does is lay out these broad principles of interpretation, and then it's the duty of intermediary courts to apply those because the Reconstruction Amendments all have the enforcement provision, which is what this is about and what City of Birney was about. They're identical. The amendments were passed at a similar time with a similar purpose. While there is that strong language from Rodriguez, it doesn't apply in these situations. I would know even those cases who ultimately determined that it was not within the bounds for them to apply these standards still recognize that it was inconsistent at the very least, these later cases with Jones. Turning briefly to the jury instruction issue, the District Court erred in failing to give the instruction on character evidence, specifically on Mr. Metcalfe's lack of racism. The defense at trial, the fighting issue, because there was absolutely no question that an assault occurred, was whether Mr. Metcalfe did this because Mr. Standridge is African American. A large part of the defense at trial was this character evidence for lack of racism. The case law is incredibly strong in a way that is generally not seen in the jury instruction arena, that when character evidence is introduced, that the District Court must give this instruction. In fact, courts frequently reverse even under plain error review for the failure to give character and instruction on character evidence. One brief point I want to make is that the case law doesn't distinguish between when character evidence is introduced for just the general idea that the defendant is a good guy and an honorable person. This character evidence instruction is required whenever character evidence is introduced for whatever purpose. And the case law cited in our brief indicates that it's necessary whether it's just general good character trait or it goes to an element of the offense. There are no further immediate questions. I will reserve the remainder of my time for rebuttal. Procaccini. Good morning, Your Honors. May it please the Court. Francesca Procaccini on behalf of the United States. Your Honors, Section 249A1 of the Hate Crimes Act is a constitutional exercise of Congress's power under Section 2 of the 13th Amendment. Two courts of appeals have already addressed the exact arguments that the defendant raises today and have upheld the law as constitutional. All the parties agree that the controlling case here is Jones v. Mayer, and that case does remain binding precedent on this Court. I don't think the parties agree with that, do they? I think the parties agree that Jones remains the controlling case on the scope of the 13th Amendment. I think she's making the argument that it's been abrogated by City of Burney and Shelby County. Neither Shelby County, no, no, no. The concept of deference to Congress has been changed. The concept of deference to Congress has changed in the scope of the 14th Amendment and in certain legislation passed under the enforcement provision of the 15th Amendment. Neither one of those cases, however, affect Jones. Neither one of those cases address Jones, even mention the 13th Amendment, or actually undercut the holding of Jones at all. First of all, because the provisions at issue in the 14th and 15th Amendments are entirely different from the substantive provision of the 13th Amendment. Second, because the drafting histories of all three amendments are very different. And also because, turning to Shelby in particular, even in Shelby the court made clear that the current need standard doesn't apply blanketly to all legislation or even to all legislation under the 15th Amendment. It was very clear that because two specific conditions were present in the Voting Rights Act, which it called extraordinary multiple times, the fact that the Voting Rights Act violates the principle of equal sovereignty and also impinges on a core function of the states, that that is why it merited this heightened current need standard. And so both Bernie and Shelby, while they tweaked the case law for the court's standard of review for legislation passed under Section 5 of the 14th and Section 2 of the 15th, they don't influence the holding of Jones. And I would return also, I didn't mention the textual, Ms. Quick mentioned the textual similarities between Section 2 of the 15th and Section 2 of the 13th, and even when we look at the text, Section 2, the enforcement provision, they both permit Congress to pass appropriate legislation to enforce the provisions of that article. So even a textual analysis kicks up the enforcement powers back to the substantive provisions of the 13th and the 15th and the 14th, and it's the difference there that is key. And the Supreme Court acknowledged as much very early on in the civil rights cases themselves. The Supreme Court stated the province and scope of the 13th and 14th Amendments are different. The powers of Congress under them are different. While Congress has power to do under one, it may not have power to do under the other. So the fact that we would treat Congress's power as different under all three amendments is not only rational in theory, but has a heavy basis in the case law. Do you agree with Ms. Quick that under Section 249, an African-American person could be charged with a hate crime directed against a white person? I do agree with that characterization, yes. So even if Jones is good law, is it rational for Congress to conclude that Section 249 helps eradicate a badge of slavery? Yes. So first of all, that's not this case. And so a constitutional challenge to the statute based on these facts would fail. And they're bringing a facial challenge to the statute when truthfully, even an as-applied challenge would fail in this case, which renders the facial challenge moot. But even taking your honors hypothetical, yes, the Supreme Court and multiple courts of appeals have always reconciled the tension between the historical focus of the 13th Amendment on eradicating African-American slavery due to our unique history with that institution and the egalitarian language of both the Equal Protection Clause and Section 1 of the 13th which eradicates slavery generally and does not draw any sort of racial distinction. And so this is why our civil rights laws generally apply even when it's discrimination against a white person or a member of a majority in a community. And so while the Second Circuit in U.S. v. Nelson has a footnote 27, has a good footnote discussing the case law on how courts have reconciled this apparent tension, but you would basically run into equal protection problems if you didn't permit it to go both ways. And again, your honor, even if that application of the law might be at the outer limits of the 13th Amendment, Section 2 power, that is not this case and that is not, that's just not before the court at this time. I can turn to the jury instruction issue. Well, let's not go there yet. Okay. How is attacking someone in a bar akin to a badge of slavery? Thank you, your honor. So a normal bar fight would not rise to the level of the racial violence that Section 249A1 criminalizes and is that type of racially motivated violence that is a badge or incident of slavery. Not only was such race-based violence used as a necessary feature of propagating slavery at the time, but then it was repeatedly used and even today continues to be used as a means of returning mostly African-Americans to a de facto slave status or to impinge people's rights and freedoms as citizens. Is there a reasonable threat of that now? Yes, absolutely. Of returning African-Americans to slavery in our country? Of impinging on the social and political rights that the 13th Amendment guarantees to all people? Yes. And so it is, you know, it is for that reason that it returns also to why if the court is inclined to think that Shelby County might have some basis in the analysis here, even under that basis, Congress has, you know, many findings in its legislative history and in the statute itself, which show that this is a current problem and it tailored a very limited response to that problem. Would you like me to turn to the jury instruction? I'm happy to stay on the constitutional issue. So for the jury instructions, Your Honors, first of all, the court did not commit any error for two reasons. The first is that the court was not required to give the requested instruction at issue. It was within the court's discretion to give, but it was not required to give it under this case, under this court's case law. And secondly, because the instruction was adequately given in other words and other forms in all of the other instructions that the court gave. So the instructions as a whole fairly and adequately submitted the issues to the jury, which is of course the standard for determining if there was error here. The instructions permitted the jury to understand what the testimony was in the case, to consider all of the circumstantial evidence. It understood that circumstantial evidence goes to motive. And so the jury was very fairly instructed on the defense's theory of the case, which was that Mr. Metcalf could not have committed this assault because of race, because he was not generally a racist person. That was the evidence put on. That's what the jury understood the evidence to be. And it still found that the but-for cause of Mr. Metcalf's very vicious assault on Lamar Sandridge was because of race. And even if, again I'll just turn it like clearly, it's a harmless error even if your honors do find it to be error. The standard of course is that the failure to give the instruction must mislead the jury or affect the verdict. Here the government presented overwhelming evidence that Mr. Metcalf acted because of on, that Mr. Metcalf did not act because of race. So the evidence is clear, the verdict was clear, and I think the court should affirm on that basis. Let me go back to the other issue just for a second. Of course. Doesn't Jones specify that Congress has authority to pass legislation that is effective? Yes, I believe the exact words in Jones are, rationally determine what are the badges and incidents of slavery, and translate that determination into effective legislation. How could federal legislation be effective if there's no evidence that the states aren't prosecuting these crimes? Well, Congress did find evidence that the states could use federal assistance in prosecuting these crimes. And that is not only in the legislative history, but actually in the findings in the statute itself. Do you make any sort of finding that the states were failing to prosecute these kinds of crimes? Well, some states don't have a hate crimes act, so they would be failing to prosecute because they don't have a means of prosecuting. Yeah, but they all probably have assault charges, don't you think? Yes, but that returns to the point that a simple assault is not a hate crime. A simple assault is obviously a terrible thing that should be criminalized, but it does not carry with it the unique community, a violation to the community, violation to the standards that we hold dear ever since the Civil War and the Reconstruction Amendments. A hate crime, especially a race-based hate crime, is something that is extra intolerable in our society due to our unique history. And so for a state to prosecute... I think assaults generally have been intolerable long before the Civil War. Yes, but when you have an assault plus a act of violence that communicates to someone that they are less than, that they are a second class citizen, that they deserve to be in a subordinate status, that's even worse. And the findings do bear that out. In fact, the findings do say that Congress anticipated state and local governments to maintain primary responsibility, but that it found that hate crimes were enough of a problem that it warranted federal assistance. Had there been a state prosecution in this case? No. The local state prosecutor actually requested that the federal government handle the prosecution. So also in terms of any of the federal concerns, not only are they certainly not present in this case where the state actually requests the federal government to come in and did not run a parallel case in any way, but that is also one of the conditions that the Attorney General is required to certify in order for the federal government to bring a prosecution under the statute anyways. So the statute is very aware of the federalism concerns. It's limited to... It recognizes those, it limits the amount that the federal government can do here. And what it does permit the government to do is all in the interest of eradicating the If your honors have no further question, I will rest on the briefs and ask that you affirm. Thank you, Ms. Procaccini. Ms. Quick. I'd like to begin by focusing on the argument that the idea that the 14th and 15th amendments should be interpreted differently because the substance is different than the 13th amendment. Of course, the 14th and 15th amendment are different from the 13th amendment and that the rights are different. And then when courts are interpreting the scope of Congress's power to legislate and what they can do, it will be different because the rights are different. What matters here and the relevant question is, should there be a difference between how courts interpret the enforcement provisions? And there should not. The principles that determine what Congress can do within whatever that right may be should apply similarly among all three amendments because the enforcement provisions are identical and were passed at similar time with a similar purpose. And even though the 14th and 15th amendments specifically deal quite clearly with infringement on state sovereignty and the idea of what states can do, we still have that here. This is a situation where Congress is attempting to enter an arena that is typically handled by the states, intrastate assaults. And so those concerns that are present in 14th and 15th amendment case law interpretation also apply here when interpreting the scope of Congress's power under the 13th amendment. I also think the relevant question going to this concern of what do hate crimes mean? Does it mean that slavery is in danger of returning? Is this necessary to eradicate or badge incidents of slavery? The question isn't, do hate crimes, are they awful? Do they infringe on someone's, um, you know, are they intended to make someone feel inferior because of their race? Yes. But that's not the question that is before this court today. That's not what the question is and what Congress can do with the power under the 13th amendment. It has always been, even in Jones, about eradicating the badges and incidents of slavery. It is not about trying to eliminate or criminalize any kind of hateful or discriminatory conduct. In this case, the court's case law in Mabee, which relied on Jones to determine what those badges and incidences of slavery are, make clear that what section 249A1 attempts to do goes too far. That this is not attempting to eradicate a badge and incidents of slavery. I'm going to, just to clarify, I think initially there was a state prosecution against Mr. Metcalf, but that there was no, as counsel indicated, there was no kind of concurrent prosecution. It was dismissed. And I would note that the two, um, co-defendants, it's my understanding that they pled before Mr. Metcalf's case went federal. So that was potentially- Pled to state charges. They pled to state charges, Your Honor. Um, if there are no further questions, um, I would ask this court for the reasons stated today in the brief to find that section 249A1 is unconstitutional and reverse Mr. Metcalf's conviction or alternatively reverse and remand for a new trial based on the jury instruction error. Thank you. Thank you, Ms. Quigley.